here this morning. We will just point out a couple of procedural features. Our traffic light system you may be familiar with. When the yellow light comes on you have two minutes left. When the red light comes on we ask you to conclude your argument as quickly as possible. Also we've read the briefs. We're familiar with those. We have not necessarily read the citations when those are appropriate. First case of the morning is number 17-50889, U.S. v. Martinez. Mr. Biggs. Good morning and may it please the court. William Biggs here on this case is whether this court should remand Mr. Martinez's case back to a different judge based on impermissible meddling in plea negotiations in violation of Rule 11c1 of the Federal Rules of Criminal Procedure which make categorical and unequivocal that no negotiations of any kind, the judge may not take place, participate in negotiations of any kind. And among those things that have been signaled by the courts, by this court in prior cases is comments predictive of the criminal justice outcome. And in this case the district judge at the docket call immediately prior to trial indicated that it wasn't looking very good for Mr. Martinez. And this is in light of the fact that several other co-defendants, all of the other co-defendants had pled guilty and one remaining co-defendant was set to be pled guilty. And so commenting that it doesn't look very good sends a message to Mr. Martinez that if he goes to trial he's likely going to get found guilty. And this is blatantly a violation. The court has found violations on far less comments to the effect of, well, we need to negotiate the civil settlement before we resolve your plea. It's probably going to be best for you if you do this. Those are almost more indirect than saying it's not looking very good for you at your trial. The court further noted that there could be a loss of acceptance or responsibility, an increase in the guidelines. I think when that's taken together with this comment it only further exacerbates that level of coercion. Even though there are cases the courts are a little, there's some tension in some of the unpublished cases on merely stating that you might get two levels off or gain two levels for acceptance may not arise to a violation by itself, but the courts have said that the better practice would be to leave that to the counsel to advise. The case law is really strict in this area, I'll give you that. But the district judge here, the defendant, the hearing was over, the defendant starts asking questions, doesn't like his lawyer. I mean, you're the district judge sitting there, you want to make sure the defendant is well informed, especially when he's having issues with his lawyer because, you know, if he'd gone to trial and lost, he may well be then saying, oh, I didn't realize what I was in for. You know, he might be bringing that kind of claim and ineffective assistance. I mean, it just seems like it puts the judges in a very difficult position. And I mean, I think the reality here is the judge, if he did induce the plea as you're saying, that probably did save your client from a life sentence because at trial it probably wouldn't have turned out well and given what the judge later said about sentencing, it would have been a life sentence. So it's, I don't know, I just think it's a difficult situation judges are in when they have a confused defendant. Well, when your three co-defendants have pled out, it's hardly a stunning assertion that it's not looking good. But, Your Honor, I would submit that it's not the observation for the judge to make. I understand the rules, but there's a lot of context here, too. This defendant was canny. He bypassed his lawyer and said, what does that mean? I want an explanation of that. He engaged Judge Sparks back and forth. And then he ended up grabbing the plea that he wanted. So what do we do with that? What does he want? Well, Your Honor. What does he want now? Does he want to go to trial? Your Honor, I think it's unclear what ultimately he wants if this case were to be remanded aside from a separate from proceeding in front of a different judge. I think that the, while even if the defendant was asking questions and leaving the judge in a tough position, it's important to remain in that neutral position because this is some sort of catharsis for him mentally because the outcomes, can you think it could be worse? Yes, Your Honor, and that is a risk that could arise. However, I would point out that the initial plea he had agreed to was to a 151 month sentence. And then he ended up having reservations, deciding he wanted to go to trial, the eve of trial. You know, trial's Monday, Friday. He said, I didn't even know I was coming to court. And he ultimately agrees to that. That gets set aside, and now he's not getting that deal anymore. He's now getting a worse deal. He got 20 years instead of 12. And I believe, to me, if the error was at that initial hearing, which you're alleging, which induced him into this plea agreement, which was a good deal by your account, I mean, the remedy would be he'd take away that plea deal he was wrongly induced into entering into, and he'd have a choice again about going to trial or trying to get a new plea deal. Is that what would happen if we sent it back? Well, when the plea deal got busted, and he's back to square one, he's really not fully back to square one because he knows the judge's success in his opinion on how it's looking. It's not like that just wipes the slate clean of the judge's prior comments to what he had been saying. In the second, at the first sentencing, when he sets aside the plea, then we hear more comments that only would exacerbate defendant's fears that he's not before someone that he can have a fair trial in front of. He's going to be found guilty. He says it unequivocally on the record, and he says that he signed out for the wiretaps, and this is a strong case. At that point, I believe the judge is not playing the role of a neutral judge, at least in the defendant's mind, because the courts are clear that we're focused on what's going on in the defendant's mind, and even if the comments are wrong to the judge. It seems to me a very odd remedy. If the claim is he was wrongfully induced into entering into this plea, we're going to enforce the plea that shouldn't have happened. I mean, it seems to me you would take out the plea, and he'd be back maybe in front of a different judge. I know you're asking for that, but he'd be back in the trial court facing trial. That just seems to me the logical remedy, if you will. Are you here on plain error? Yes, Your Honor. So if he goes back to exactly the same situation, how does this offend every third prong of plain error? Well, Your Honor, the analysis on the plain error, where there's a reasonable probability that he would have exercised his right to go to trial, I think is manifest in the timing. The courts have talked about the timing, the temporal proximity. Here we have these statements by the judge, him entering a plea the very same day. In other cases, these courts have said one day, five days, that's close enough. So that temporal proximity I would point to as being the most significant issue. And then on the, I did make an alternative argument that the court could consider a remand for resentencing in light of the fact that the court did make comments that were looking at a life sentence, and he wound up with a much more unfavorable deal after the second deal was busted. And see, I think that only reinforces the notion that you're not really starting on a clean slate by just wiping it clean and now we're set for trial again. Let me ask you though, had the judge not made that initial comment, and they had the agreement, the 151 months, wouldn't the judge have done the same thing, busted the deal? Because this 151 months was a pretty generous sentence in light of the amount of methamphetamine the fellow had. So, I'm saying, you know, he says he, quote, ends up with a worse deal, but the judge thought 151 months was ridiculous, right? He did not agree with that sentence. That is correct. And it seems to me what your client's really upset about is the fact that the judge didn't accept that, in retrospect, very favorable plea. It's not so much that he entered into that plea, right? If what you're asking for is enforce that 151 months, he's still happy with that deal that he was given, but he didn't accept the deal. Well, what we know is that he was not going to take the deal, and then the judge talked to him, and then he agreed to take it the same day. And I guess another way of putting what I've asked, if your client wants enforcement of that 151 month deal, doesn't that mean that it wasn't the judge's comments that caused him to enter into it? He just thought it was a good deal for him? Well, we're not, I mean, we really aren't asking for enforcement of the 151 month deal, because I realize that the court can't, I mean, it's really the government is not really bound by that deal anymore, and I can't exactly ask for specific enforcement of the deal, since the judge didn't accept the agreement. But what I can say is that there's a question as to my client's decision making in deciding whether to plead guilty or go to trial, in light of the court's comments, in light of his intent to, apparent intent to go to trial, in front of the, when confronted with this very deal, and then it's only exacerbated when the deal just gets worse. To me, that just shows that he's got, that just shows more reservation about proceeding to trial in a court which says that, in the second, in the second instance, unequivocally, he's going to be found guilty. I also think it's improper to be discussing the time and expense of the wiretaps. That just makes, that should have no bearing on whether or not he should accept that plea agreement. That kind of thing. Looks like he has to go to trial. I don't think there's a stake in it. That was in the context of where they were, a different provision of the code, the subset of the code, where they were, they were asked to tie the hands of Judge Sparks. And in reply to that, he said, if all of the judges here won't even accept those, he said, I will look at them. But given the fact that this was a wire thing, and all the, I think that's ridiculous. That's the context in which that was made. Your Honor, that is true. I thought, I thought, I mean. That is true, and the rules do allow for a more animated discussion when we're evaluating a plea agreement, but I do think it goes too far when it talks about the time and expense to the government, the strength of the evidence, when deciding whether or not a plea agreement should be taken. The court pressed the government, why is this a deal, and the government indicated it had problems proving its case. And then the court said, no, you could have proven your case. That just sends major alarms to a defendant who's going to have to appear in a trial. And if the situation were reversed, the defendant agrees to a plea agreement with, say, a ten-year floor, and the court said, I don't want to take this, this is too high, and the defense counsel says, well, the evidence was strong, where is he convicted? He's like, well, I don't think he would have been. It's kind of a weak case. And then he goes to trial and gets convicted. That doesn't seem right, because the court's opining on what the evidence shows and what it's worth, the odds of you winning, and that's separate and apart from just having any kind of irritation about the expense involved. It just makes the judge look, which is one of the principles underlying Rule 11, like the judge has a stake in it, that he has something to gain from this plea agreement by being involved in it. Now ultimately, there was no plea agreement, even though it was talked about on the record at sentencing in terms of a plea agreement, but there was no plea agreement. But I would submit, in the alternative, that the court's comments, even if talking about a plea agreement intentionally, in the alternative, at least infused into the sentencing proceedings such that there should be a re-sentencing in front of a different judge, and we see a palpable change. One, the facts are exactly the same, and the government had been advocating for a 151-month sentence, and now it turns around and says, we want the max. We want 20 years. And there's really no difference in the facts to warrant that, and I think it could be... Although it recharged him to take away life. I view that as sort of getting around, the district court judge says that you're being too lenient with your plea deal, so the district, the U.S. Attorney's Office says, well, we'll charge him with a cap of 20 instead of a cap of life. So it... But it still appears to have affected the court, the government's position on what it was willing to advocate for 151 months, and then it turns around and advocates for 20 years. It's hard not to, from a defense perspective, to think that the comments the district judge made had an impact on what the government advocated for in sentencing. And I'm out of time. We have time for rebuttal if you choose. Thank you. Mr. Stelmach. May it please the Court. First comments at the status conference on April 28th. The conference was just set up as a scheduling matter, and the judge says, well, the last defendant's going to plead guilty, and today is the last day of the Ellis deadline, and tries to dismiss him, tries to excuse him, but Martinez, the defendant, keeps asking questions. He asks, what's this Ellis deal? And the judge says, well, it's about a plea deadline, but if you want a trial, there's no problem. I'll give you a trial. And he mentions the acceptance of responsibility, but the Larrier case said that when the judge said, you're giving up three levels if you're convicted, that was not found to be error in that case. But when he talks about, he then says it doesn't look very good when the other defendants have entered pleas. But then he says, that's just a factor you could talk intimately with your lawyer about. So in context, it's just one statement in the course of answering his questions, noting that a factor had arisen about Meeks' plea. But my main argument is that he hasn't met his heavy burden to demonstrate a reasonable probability that but for the judge's exhortations, he would not have pleaded guilty and would have exercised his right to trial. Now, he does plea that day, right, on the 28th of April, the same day as the conference and the Ellis deadline, and the argument is that the immediacy of the plea shows prejudice, but that's not the plea that he's convicted of. That's not the plea that he's seeking to vacate. That plea was rejected on July 14th, almost three months later, and then the case is set for trial in October. So he was back to being free to exercise his right to go to trial. So the intervening events of so much time and all those intervening events, I think, negate the chance of a but for showing that he's required to make. It's much more likely that it was the 150-month deal instead of the life sentence that he was completely familiar with based on the rearrangement that was the but for causation for that plea. But like I said, that's not the plea he pleaded guilty for. It was three months later. Was he the ringleader of this group, or? According to the pre-sentence report, he was. Okay. And he was no stranger to the criminal justice system. No, and at that, what's called a sentencing hearing, but it's where the judge rejects the C1C plea, the first thing the judge goes into is his long history of criminal conduct. It was on and on and on about that until he finally gets to the part about basically excoriating the prosecutor for offering this agreement. And the prosecutor says, well, there might have been problems with relevant conduct. And the judge says, well, you're talking about five kilograms and the pre-sentence report has 104 kilograms. That's such a big difference. And when the judge talks about a life sentence there, he's not, he's talking about what the maximum possible sentence is. That's not an impermissible conduct. But when you get to the part where he says it doesn't make any difference one way or another, that's really a statement to, and by the way, all of these statements that it's a wire, it doesn't make any difference, those are all occurring at the bench, not within the hearing of the defendant. And it's in the course of why are you, why is the prosecution doing this deal? That's just the theme that occurs on and on. And if the judge says he has a firm view of guilt, yes, he has a firm view of guilt. He's already heard him plead guilty. He's seen the factual basis. He's seen the pre-sentence report. The court can in the context of evaluating a C1C plea, he can compare the punishment under the agreement to the appropriate punishment for the conduct of his whole. I think the judge is obligated to do that. The judge is obligated to do that. And you can't analyze the appropriate punishment for the conduct of the whole without assuming that he's guilty and assuming that he's going to be found guilty. The relevant inquiry on these cases is whether the judicial participation suggested the parameters of an agreement or led to an agreement. He just says 151 is no good. He doesn't suggest any other plea deal. In fact, it doesn't even seem like he wants a plea deal. Step back a second. I mean, the government is conceding that the judge's statement at the original hearing violated Rule 11C1. Well, is it a statement predictive of a criminal outcome? It doesn't look good. I think it can be said to be predictive of a criminal outcome. But as I said back there, it's in the context of these other defendants pleading guilty. And he says it's a factor to consider and talk to your lawyer about it. As to the burden to show but for prejudice, as to these judges. It's reasonable probability they have to show. A reasonable probability that but for the judge's exhortations, he wouldn't have pleaded guilty. In terms of prejudice, how did the judge's comments affect subsequent negotiations? I don't think they affected them at all. What happens after rejecting the 151 months is the government supersedes with the B1C, with the 20-year cap, which was the best possible deal he could have gotten under the circumstances. But isn't his argument that at that first hearing, if the comments weren't made, he wouldn't have entered into the first plea, which would have resulted in a trial soon thereafter? But — I mean, you're analyzing it, whether it caused the second plea. It gets complicated, because there's so many — Right. There's so many events there. It gets complicated, because he's — three months after that first — those first statements, his plea deal is rejected. He's free to go to trial. So you're saying after three months, that's part of a long chain, causal chain, that had an influence? I don't think that's sufficient. Who was representing him at the trial level? I assume it was another CJA or public defender. No, it was appointed counsel. Yeah. He first had the public defender, and then there was a conflict. Right. OK. He was appointed counsel. So my argument for prejudice is that it was the second superseding information, which capped his sentence at 240 months, and his plea occurs one day after the filing of the second superseding information. And that is what was reasonably probable for him entering the — entering his plea, and not the judge's comments. OK. I guess we — Thank you, Your Honor. We have your argument. Thank you. Mr. Biggs, any rebuttal? Yes, Your Honor. Just in response to the issue on what must be shown to establish the third and fourth prongs, reasonable probability is not prominent to the evidence, and there's not — there's — usually it's going to be hard to, you know, show some verbal statement on the record, I feel coerced, you're appearing in front of that very judge to whom you're complaining — to whom you're complaining about. And that courts have been sensitive in that, and that's manifest in its prior cases about this subject. But the one thing the courts have pointed out, this Court and the Supreme Court, is the temporal proximity. And we have that right here. And I think the context of that — of that first hearing especially, it's not only like the same day, it's, hey, 5 o'clock is — you know, here's the deadline, you better decide quick. You know, it's much more of a — it seems hostile when you read the transcript, and it seems like there's not much room to make a decision. That's — that's how I read that. And I don't think that there's really much more needs to be shown beyond this statement of probability of guilt, that after today you can't take a plea, and it's going to be the same no matter what. So, you know, I need to have something by the end of the day. That's quite coercive. I mean, I think that at least creates a reasonable probability sufficient to undermine confidence in his decision to plead guilty versus going to trial. And then when we go further along to the next — to the next proceeding, that slate cannot be wiped clean. He says three months have elapsed from when he initiated this initial plea. Well, he's — that whole time, he's resigned himself to the plea he's entered, and then he's told, OK, we're not going to take this. You're back on the trial docket. This is a life sentence. He was going to be found guilty, and within a few weeks — again, I would say a small time period — within two weeks, he's entering a plea to terms he knows is less favorable. He no longer has a 12-year cap. Now he has a 20-year cap. And he gets the max, which is what the government argued for. So I just think it's — I think there's more than sufficient evidence to establish by a reasonable probability of a different result, which, as the Supreme Court made clear in Dominguez-Benitez, is not even a preponderance of the evidence. So we would ask the Court remand this case to a different judge. Thank you. OK. Mr. Biggs, you were court-appointed, and you got a trip to New Orleans out of it. But you did a very good job in a difficult circumstance, and we very much appreciate your work. Thank you, Your Honor.